Sunil A. Brahmbhatt, Esq.
Law Office of Sunil A. Brahmbhatt, PLC.
2700 N. Main Street, Suite #310
Santa Ana, CA 92705
Tel: 714-285-0192 ▪ Fax: 714-917-3130
Email: sunillaw@yahoo.com

Attorney for Plaintiff-Counterclaim Defendant,
EXCELBIS LABS LLC.
A California Limited Liability Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DISTRICT

| | |
|---|---|
| PERKINELMER HEALTH SCIENCES, INC., A Delaware Corporation.<br>                    Plaintiff,<br>v.<br><br>EXCELBIS LABS LLC., A California Limited Liability Company; APEX ANALYTICAL, business entity, form unknown; and DOES 1-10,<br>                    Defendants.<br>_____<br>EXCELBIS LABS LLC., A California Limited Liability Company,<br>      Plaintiff-Counterclaim Defendant,<br>V.<br><br>PERKINELMER HEALTH SCIENCES, INC., A Delaware Corporation; TONY RHODEN, An Individual and Does 51-110, Inclusive.<br><br>Counterclaim Defendants, | **Case No: 8:20-cv-00527-MCS-ADS**<br>**Assigned to:** Courtroom 7C<br>**Dist. Judge:** Hon. Marc C. Scarsi<br><br><br>**SECOND AMENDED COUNTERCLAIM FOR:**<br>**(1) FRAUD & DECEIT-INTENTIONAL MISREPRESENTATION**<br>**(2) FRAUD & DECEIT-NEGLIGENT MISREPRESENTATION**<br>**(3) FRAUD & DECEIT-SUPPRESSION OF FACTS**<br>**(4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br>**(5) BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**<br><br><br> **DEMAND FOR JURY TRIAL**<br>**Original Complaint Filed:**<br>      3/13/2020<br>**1ST Amended Complaint Filed:**<br>      4/23/2020 |

Plaintiff-Counterclaim Defendant Excelbis Labs, LLC., A Limited Liability Company alleges as follows:

## THE PARTIES

1) Plaintiff-Counterclaim Defendant EXCELBIS LABS, LLC., is a Limited Liability Company (hereinafter, "EXCELBIS") organized and existing under the laws of the state of California with its principal place of business located at, 1920 E. Warner Avenue, #F, in the city of Santa Ana, County of Orange, CA 92705.

2) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, Plaintiff & Plaintiff-Counterclaim-Defendant PERKINELMER HEALTH SCIENCES, INC., is a corporation (hereinafter, "PERKINELMER") organized and existing under the laws of the state of Delaware and registered to do business in California as a foreign corporation with its principal place of business located at, 940 Winter Street, in the City of Waltham, Massachusetts 02451. PERKINELMER is the manufacturer of Laboratory Testing Instruments marketing and selling its Laboratory Testing Instruments in the cannabis testing laboratory market in the United States and has business offices established in the state of California and with sales, service, and support staff in the county of Orange.

3) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, Counterclaim-Defendant TONY RHODEN, an Individual (hereinafter, "RHODEN"), was an Employee of PERKINELMER employed as Senior Cannabis Instrumentation Implementation Specialist and lead salesperson responsible for the marketing, promotion, and sales of the Cannabis Laboratory Testing Instruments for PERKINELMER in USA including California and based in California.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

4) Defendant Kalver Scientific LLC., is a Limited Liability Company organized and existing under the laws of the state of Delaware and registered to do business in California as a foreign corporation and doing business as Apex Financial (hereinafter, "APEX").

5) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, EXCELBIS does not know the true names and capacities of other Counterclaim Defendants sued herein this Complaint as Does 51 through Doe 100 inclusive, and therefore sues these Counterclaim-Defendants by fictitious names under *Section 474 of the California Code of Civil Procedure*. EXCELBIS will amend this Counterclaim to allege the true names and capacities of these unnamed and unknown, Counterclaim-Defendant(s) as Does 51 through Does 100, inclusive, when ascertained. Counterclaim-Defendants Does 51 through 100, inclusive, shall be referred to hereinafter as, "DOE-DEFENDANTS."

6) Counterclaim-Defendants PERKINELMER, RHODEN & DOE-DEFENDANTS shall be, from time to time, collectively referred to as, "PERKINELMER DEFENDANTS.

**GENERAL FACTUAL BACKGROUND**

7) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, that PERKINELMER senior management and sales team responsible for the promotion, marketing and sale of Cannabis Laboratory Testing Instruments for PERKINELMER in USA comprised of, John Luck, Vice-President of Americas Sales ("LUCK"); Corey Morcombe, Americas Sales Director, ("MORCOMBE"); Mark Greenbaum, Sales Manager Cannabis Laboratory Products ("GREENBAUM") and Charlie Schmidt, Chromatography Product Line Leader for Americas ("SCHMIDT"), (hereinafter, from time to time, LUCK, MORCOMBE,

GREENBAUM & SCHMIDT shall be referred to as, "PE SENIOR MANAGEMENT").

8) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, that PE SENIOR MANAGEMENT team on behalf of PERKINELMER supervised, managed, and supported their subordinate Counterclaim Defendant RHODEN in his promotion, marketing & sales of CANNABIS LAB INSTRUMENTS defined hereinbelow, on behalf of PERKINELMER.

9) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, in 2018 and thereafter, PERKINELMER through PE SENIOR MANAGEMENT and RHODEN were responsible for the promotion, marketing & sales of Cannabis Testing Laboratory Instruments in USA and California which consisted of four key instruments, (a) Qsight 420 (Pesticides); (b) Flexar-HPLC (Potency); (c) Nexion ICP/MS ( Heavy Metals) and (d) Clarus SQ8  GC/MS (Residual Solvents & Terpenes) (hereinafter the instruments (a)-(d), inclusive,  shall be collectively referred to as, ("CANNABIS LAB INSTRUMENTS").

10) Plaintiff-Counterclaim Defendant  EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, that PE SENIOR MANAGEMENT and RHODEN were in concert with each other to further Counterclaim-Defendants PERKINELMER'S corporate strategy and scheme for greed and profits and in advancing this corporate strategy and scheme on behalf of PERKINELMER, PE SENIOR MANAGEMENT assisted, supported, ratified and enabled RHODEN to suppress pertinent facts and make false statements and representations about the performance and capabilities of CANNBIS LAB INSTRUMENTS to EXCELBIS, and other similarly situated potential cannabis laboratory customers in California.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

11) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, PERKINELEMER DEFENDANTS along with PE SENIOR MANAGEMENT were the agents, employees, representatives, partners and/or co-conspirators of each of the other and engaged in the commissions of the acts and omissions to act hereinafter alleged on behalf of PERKINELMER.

12) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, RHODEN and DOE DEFENDANTS along with PE SENIOR MANAGEMENT were acting within the course and scope, of his, her, or their duties and responsibilities on behalf of PERKINELMER as its agent, employee, representative, partner, or co-conspirator in doing the things alleged to have been done as alleged in this Second Amended Counterclaim.

13) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at all times mentioned herein, the acts of RHODEN and DOE DEFENDANTS were authorized and/or ratified by PE SENIOR MANAGEMENT on behalf of PERKINELMER, which constitutes a single continuing course of conduct.

14) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, in or about January 2018, in order to enter and exploit the emerging new market of legalized recreational cannabis in California, PE SENIOR MANAGEMENT on behalf of PERKINELMER recognized an opportunity to gain an early foothold in the California cannabis testing marketplace and in order to quickly exploit the cannabis testing market, PERKINELMER with direction and support of PE SENIOR MANAGEMENT, RHODEN and DOE-DEFENDANTS, strategized, planned and schemed a pattern of misrepresentations, deception, fraud, deceit and suppression of facts,

to enable PERKINELMER to prematurely release CANNABIS LAB INSTRUMENTS in the California marketplace.

15) Plaintiff-Counterclaim Defendant EXCELBIS is further informed and believes and thereupon alleges that, PERKINELMER with the support, guidance and at the direction of PE SENIOR MANAGEMENT and RHODEN, released the CANNABIS LAB INSTRUMENTS into the California marketplace without taking commercially reasonable steps to ensure that each of the CANNABIS LAB INSTRUMENTS, was merchantable and fit for its intended purpose.

16) Plaintiff-Counterclaim Defendant EXCELBIS is further informed and believes and thereupon alleges that, PERKINELMER and its PE SENIOR MANAGEMENT, released each of the CANNABIS LAB INSTRUMENTS without performing the necessary beta testing of the Methods and SOP's in all matrices for each of the CANNABIS LAB INSTRUMENTS to ensure reproduceable, accurate, reliable and precise results for purposes of validation of each of the CANNABIS LAB INSTRUMENTS in conformance with the state of California Bureau of Cannabis Control ("BCC") regulations.

17) Plaintiff-Counterclaim Defendant EXCELBIS is further informed and believes and thereupon alleges that, in furtherance of the strategy and scheme to deceive and defraud the potential cannabis testing laboratory startups in California, PERKINELMER and PE SENIOR MANAGEMENT directed RHODEN and DOE-DEFENDANTS to make deceptive and deceitful claims regarding all the CANNABIS LAB INSTRUMENTS as follows:

(a) that, PERKINELMER had developed standardized turn-key cannabis testing solution with plug and play laboratory instruments for testing cannabis products with each instrument having its own fully developed, validated, and tested METHODS with standardized SOP'S which were compliant with BCC regulations in for a quick and easy validation process;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

(b) that, PERKINELMER had developed validated and tested Methods and standardized SOP'S for each of the CANNABIS LAB INSTRUMENTS, eliminating the need to independently develop SOP's and Methods for each of the CANNABIS LAB INSTRUMENTS resulting in saving time in the validation process and money upwards of $80,000 for not having to develop individualized Methods and SOP's for each instrument as required by its competitors;

(c) that, each of the CANNABIS LAB INSTRUMENTS had state-of-the-art software;

(d) that, PERKINELMER field support personnel & dedicated applications and instrumentation scientists, each of whom, were highly skilled and experienced with expertise and knowledge of the cannabis industry to provide prompt, efficient and superior customer service and support on all CANNABIS LAB INSTRUMENTS.

18) Plaintiff-Counterclaim Defendant EXCELBIS is further informed and believes and thereupon alleges that, the aforementioned deceptive and deceitful marketing strategy and scheme of PERKINELMER and PE SENIOR MANAGEMENT was calculated to induce customers, including EXCELBIS, to purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS.

19) Plaintiff-Counterclaim Defendant EXCELBIS is further informed and believes and thereupon alleges that, the purpose and intent of this deceitful and deceptive business practice was strategy which was schemed to generate corporate profits for PERKINELMER along with bonuses and commissions for PE SENIOR MANAGMENT and RHODEN, for their individual personal financial gain. This Strategy and scheme was laced with malice in total disregard of the rights of Plaintiff-Counterclaim Defendant EXCELBIS and inflicting financial injury upon Plaintiff-Counterclaim Defendant EXCELBIS

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

and other similarly situated startup laboratories looking to engage in the cannabis lab testing business in California.

20) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, PERKINELMER has a previous history of custom and practice of engaging in a similar strategy and scheme of, making false claims and engaging in fraud and deceit and suppressing pertinent facts about its medical testing instruments. In order to exploit the Opioid crisis in 2013, PERKINELMER prematurely released for sale PERKINELMER'S laboratory instrument known as, AXION II 'Time-of-Flight' Mass Spectrometer ("AXION") in the USA laboratory marketplace which is the subject matter of litigation in the Commonwealth of Massachusetts, Suffolk Superior Court Civil Action No. 16-1853 (hereinafter, "AXION LAWSUIT") .

21) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges based on court filings in the AXION LAWSUIT that, PERKINELMER failed to take commercially reasonable steps to ensure that the AXION was able to produce efficient, accurate and reliable results suitable for the applications it was intended for which resulted in the AXION being incapable of producing any accurate or reliable results for urine samples testing for Opioids as represented and claims in their sales pitch to sell the AXION.

22) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, the PERKINELMER'S 2013 AXION strategy and scheme to market a laboratory instrument deceptively and deceitfully into the public marketplace which was not commercially ready for release to the marketplace is Parallel to PERKINELMER'S strategy and scheme in California for the premature release of CANNABIS LAB INSTRUMENTS through deceptive and deceitful unfair business practices of marketing and promoting its CANNABIS LAB INSTRUMENTS which were not

commercially ready for release in the California marketplace with the intent to lure and induce POTENTIAL customers, such as, EXCELBIS to purchase CANNABIS LAB INSTRUMENTS.

## FACTUAL ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

23) On December 20, 2018, Plaintiff-Counterclaim Defendant EXCELBIS was evaluating Cannabis Testing Instruments for its Santa Ana cannabis testing laboratory and was engaged in finalizing its purchase for AGILENT cannabis testing instruments for the purpose of obtaining a BCC license to perform compliance testing in the California cannabis industry. AGILENT is a leader in medical clinical laboratory instrumentation industry and had successfully crossed over and developed instruments for the cannabis testing industry.

24) During its evaluation of Laboratory Instruments for its startup laboratory, in February 2019, EXCELBIS was introduced to  Counterclaim Defendant RHODEN who represented himself as the California representative for PERKINELMER responsible for the sales, marketing, and promotion of its Cannabis Testing Instruments.

25) On February 25, 2019 RHODEN visited EXCELBIS' laboratory facility which was under remodel construction located at 1920 E. Warner Avenue, Suite #F, in the city of Santa Ana, California (hereinafter, "SANTA ANA LAB").

26) RHODEN met with EXCELBIS principal and owner, Keven Brahmbhatt, ("hereinafter, KEVEN") along with EXCELBIS consultant, Thomas Giancursio (hereinafter "TOM") and EXCELBIS attorney, Sunil Brahmbhatt (hereinafter, "SUNIL") to introduce PERKINELMER'S complete California Cannabis Testing Solution instruments which included, the Qsight 420 for Pesticides, the NexION 2000B for Heavy Metals; the Flexar-HPLC for Potency and cannabinoids, the Clarus SQ8 for Residual Solvents and Terpenes.

**27)** At the meeting KEVEN and TOM informed RHODEN that EXCELBIS was leaning towards purchasing AGILENT for their suite of instruments for the SANTA ANA LAB.

**28)** Also, at the February 25, 2019 meeting, RHODEN to convince EXCELBIS not to purchase the AGILENT cannabis testing instruments. RHODEN make the following specific representations about the PERKINELMER CANNABIS LAB INSTRUMENTS to induce EXCELBIS to purchase PERKINELMER'S complete California Cannabis Testing Solution instruments as follows;

    **a)** that, PERKINELMER had the only modular turnkey plug and play type Cannabis Testing Instruments in the cannabis testing industry and PERKINELMER had developed industry-leading proven validated Methods with standardized SOP'S specifically for each Cannabis Testing Instrument for quick and easy preparation of a validation package to submit to the BCC for regulatory approval of a California Cannabis Testing Laboratory License.

    **b)** that, PERKINELMER had developed, tested, and validated Methods with standardized SOP'S for each of the CANNABIS LAB INSTRUMENTS which would allow EXCELBIS, to prepare validation packages quickly with ease and efficiently within sixty (60) days of installation of the instruments for regulatory approval by CBB. RHODEN further represented that the short time for the validating the instruments with PERKINELMER'S CANABIS LAB INSTRUMENTS will save EXCELBIS up to six (6) months and will allow EXCELBIS to enter the cannabis testing market quickly as EXCELBIS would not have to develop methods and SOP's individually for each instrument. This in turn would save EXCELBIS as such as $60,000 to $80,000.00 for a PH.D to develop individualized SOP's and Methods which would be required for

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

AGILENT'S cannabis testing instruments being finalized for purchase by EXCELBIS, thus, the PERKINELMER solution would result in EXCELBIS generating profits quicker and more efficiently.

c) that, PERKINELMERS standardized SOP'S and proven, tested and validated Methods for validation of each of the CANNABIS LAB INSTRUMENTS met California's Cannabis Regulations and instrument validation packages were being accepted by the BCC for quick and easy approval for each instrument for issuance of a California Cannabis Testing Laboratory License by the BCC.

d) that, the highly qualified personnel of PERKINELMER would install the CANNABIS LAB INSTRUMENTS within three to five days and training would commence and be concluded within two weeks for all the instruments and validation could commence quickly and efficiently which will comply with BCC regulation. And that a validation package can be prepared with ease and completed within sixty (60) days as a result of PERKINELMER'S developed method and standardized SOP's.

e) that, the PERKINELMER pesticide analyzer, the QSight 420, was a new instrument being upgraded from the Qsight 220 which was more sensitive to meet California's stringent guidelines for pesticide testing requirements. The Qsight 420 was the most efficient pesticide detection instrument in the market for testing all California required sixty-six (66) pesticides and six (6) required mycotoxins all on one instrument. And, that the Qsight 420 had proven, tested and validated Method with standardized SOP's in all matrices which provided an accurate, precise, reliable, and reproducible results for quick and easy validation of the Qsight 420.

#
#

**f)** that, the QSight 420 with its standardized SOP'S with accurate, precise, reliable, and reproducible Method was quick and efficient allowing for a through-put of seventy (75) BCC compliant tests in a 24-hour period.

**g)** that, the PERKINELMER potency analyzer, Flexar-HPLC, was easy to operate and was a trouble-free instrument due to its state-of-the-art technology and software combined with its streamline SOP's providing efficient and fast results in multiple matrices with exceptional reliability, accuracy, and precise results for testing cannabis potency.

**h)** that, each of the CANNABIS LAB INSTRUMENTS had state-of-the-art technology and software for all its Instruments, each of which are being implemented seamlessly to interface with a third-party vendor, TagLeaf's Laboratory Information Management System ("LIMS") software platform.

**i)** that, PERKINELMER had highly skilled, knowledgeable, and experienced field support personnel & technicians to provide quick field support and service along with their dedicated instrument application Scientists each of whom were highly skilled and experienced to provide training and instrument support to troubleshoot instrument application issues quickly and promptly in the field.

**29)** At the meeting RHODEN requested KEVEN to send the floor plan of the SANTA ANA LAB and RHODEN would provide a layout of the CANNABIS LAB INSTRUMENTS. RHODEN also invited KEVEN and TOM to attend the Emerald Scientific Conference at the Loews Coronado Bay Resort being held February 27th through March 1, 2019 as PERKINELMER was going to have its new Qsight 420 on display and other cannabis testing instruments.

**30)** After the Meeting on February 25, 2019, KEVEN sent RHODEN an email with the floor plan for the SANTA ANA LAB. Attached hereto as Exhibit 1 is a true and correct copy of the 2-25-2019 Email from KEVEN to RHODEN.

12

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

31) KEVEN and TOM met with RHODEN on Thursday, February 27, 2019 at the PERKINEMER booth at the Exhibit Hall at the Emerald Conference at the Loews Coronado Bay Resort and RHODEN. RHODEN showed the Qsight 420 and re-iterated that the PERKINELMER CANNABIS LAB INSTRUMENTS are simple to operate and a plug and play turn-key operation for cannabis testing and all CANNABIS LAB INSRUMENTS come with developed and validated Methods and Standardized SOP's for quick validation saving time and money and further made the same representations as set forth in Paragraph 28 hereinabove, which are incorporated herein by this reference.

32) RHODEN supported his representations by providing KEVEN and TOM with a press release dated February 19, 2019 that PERKINELMER had been awarded the five (5) Emerald Test Badges for Proficiency Standards for Cannabis Testing confirming the ability of PERKINELMER CANNABIS LAB INSTRUMENTS testing methods to accurately detect pesticides, heavy metals, residual solvents, terpenes, and potency. A copy of the February 19, 2019 Press Release is attached hereto as Exhibit 2 and incorporated herein by this reference.

33) Also, at the PERKINELMER Booth, to further convince and validate the representations being made by RHODEN as set forth hereinabove, EXCELBIS to purchase the CANNABIS LAB INSTRUMENTS from PERKINELMER, RHODEN provided KEVEN and TOM with a press release dated November 14, 2018 regarding PERKINELMER'S introduction of the Qsight 400 Series at MJ BIZCON in Las Vegas. RHODEN pointed out in the press release and re-iterated that, the Qsight 420 provides Complete Standard Operating Procedures ("i.e., SOP's) outlining sample prep procedures, acquisition methods for quick implementation. A copy of the November 14, 2018 Press Release is attached hereto as Exhibit 3 and incorporated herein by tis reference.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

34) RHODEN informed KEVEN and TOM that he could assist EXCELBIS in providing a layout of the instruments and on March 11, 2019, RHODEN sent to EXCELBIS a proposed layout pf the CANNABIS LAB INSTRUMENTS. A copy of the layout is attached hereto as Exhibit 4 and incorporated herein by this reference.

35) On March 11, 2019, RHODEN sent an email to KEVEN at EXCELBIS to bring Genie Scientific to the SANTA ANA LAB on March 12, 2019. Genie Scientific is the OEM partner of PERKINELMER for its instrument benches and other provided support and other equipment required by PERKINELMER to prepare the lab for installation of the CANNABIS LAB INSTRUMENTS.

36) On March 11, 2019, RHODEN also emailed the Power & Gas requirements for the CANNABIS LAB INSTRUMENTS  to EXCELBIS to use for the meeting at the SANTA ANA LAB with RHODEN and Genie Scientific, PERKINELMER'S OEM partner. A copy of the facility requirements Chart for Gas & Power is attached as Exhibit 6 and incorporated herein by tis reference.

37) On March 12, 2019, KEVEN met RHODEN at the SANTA ANA LAB and was introduced to Mel from Genie Scientific, the OEM partner of PERKINELMER. RHODEN informed Mel of Genie Scientific to provide a bid for the benches the hood required by PERKINELMER in the event that EXCELBIS decided to commit to the purchase of the PERKINELMER CANNBIS LAB INSTRUMENTS.

38) Thereafter between March 12, 2019 and into late April 2019, RHODEN made several visits to EXCELBIS' SANTA ANA LAB and met with KEVEN and TOM and EXCELBIS' architects and general contractors providing explanations of the power requirements (Exhibit 6) and instrument layout (Exhibit 4) all while trying to convince KEVEN and TOM to commit to the purchase of the PERKINELMER CANNBIS LAB INSTRUMENTS and re-

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

iterating the same representations made to KEVEN and TOM as set forth in paragraphs 28 through 33, inclusive, incorporated herein by this reference, and stressing that PERKINELEMER was the only manufacturer in the cannabis testing space which had developed validated methods and standardized SOP's which met the BCC regulations and requirements for a quick validation which will allow EXCELBIS to quickly generate revenue and be profitable.

39) At these several meetings, in March 2019 which occurred at the SANTA ANA LAB, RHODEN represented to KEVEN that the Qsight 420 with its throughput of 75 tests in a 24-hour period would allow EXEELBIS to be very profitable immediately as there was a shortage of labs and licensed testing labs were in demand. And RHODEN further represented that with the entire PERKINELMER CANNABIS LAB INSTRUMENTS setup, EXCELBIS at a minimum of running 20 Compliance tests a day EXCELBIS would easily generate a monthly revenues of $220,000.00 per month.

40) RHODEN invited KEVEN to attend the May 8, 2019 Cannabis and Hemp Science Seminar in Cerritos, California which was being organized by PERKINELME. KEVEN attended the PERKINELMER seminar in Cerritos.

41) At the Seminar, SCHMIDT had a presentation and made the same representations in his seminar supporting the representations made by RHODEN about the Qsight 420 and its plug and play turn-key solution for pesticide testing. Additionally, SCHMIDT represented that PERKINELMER had developed and validated a Method with standardized SOP's for quick and easy validation meeting the guidelines and regulations of the BCC. Also, at the Cerritos Seminar, RHODEN was continuing to make the same representations to KEVEN and others in attendance about the CANNABIS LAB INSTRUMENTS as set forth in paragraphs 28 through 33, inclusive, and incorporated herein by this reference.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

42) In order to convince EXCELBIS and secure a commitment from EXCELBIS to purchase CANNABIS LAB INSTRUMENTS, PERKINELEMER provided EXCELBIS ninety (90) days to test drive the Qsight 420 after it was validated and if EXCELBIS was not satisfied, EXCELBIS would not have to pay for the Qsight 420 and it could be returned at no cost. RHODEN stated to KEVEN and TOM that after validating the Qsight 420, the instrument will pay for itself in 90 days. Based on the representations of RHODEN, as set forth in paragraphs 28 through 33, inclusive, and incorporated herein by this reference, and the ninety (90) day test drive of the Qsight 420 at no cost, On May 9, 2019 EXCELBIS' committed to purchase the  CANNABIS LAB INSTRUMENTS.

**FIRST CAUSE OF ACTION**
**FRAUD & DECEIT-INTENTIONAL MISRERESENTATION**
**(Cal. Civ. Code §1710(1))**
**(Against all Counterclaim-Defendants and Doe-Defendants)**

43) Plaintiff-Counterclaim Defendant EXCELBIS hereby re-alleges, refers, and incorporates by this reference, paragraphs 1 through 42 of this Counterclaim as though fully set forth herein.

44) Plaintiff-Counterclaim Defendant hereby specifically incorporates paragraphs 14 through 19, inclusive, of the GENERAL BACKGROUND FACTS in their entirety  by this reference.

45) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at the time that Counterclaim Defendant RHODEN on behalf of himself and as the Employee and agent of PERKINELMER made the representations to EXCELBIS as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference.

46) During the period, February 25, 2019 through to May 8, 2019, RHODEN, along with PE SENIOR MANAGEMENT and in furtherance of the strategy and

scheme devised by them, RHODEN continued to made the representations &
statements to EXCELBIS representative, KEVEN and TOM, as set forth in
paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are
incorporated herein in their entirety by this reference, to induce EXCELBIS to
purchase the PERKINELMER'S CANNABIS LAB INSTRUMENTS through
Defendant APEX.

47) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and
thereupon alleges that, Counterclaim Defendant RHODEN on behalf of
PERKINELMER with the knowledge of PE SENIOR MANAGEMENT
intentionally misrepresented material facts as set forth in paragraphs 28 through
33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in
their entirety by this reference,

48) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and
thereupon alleges that, PERKINELMER, RHODEN and PE SENIOR
MANAGEMENT  had specific knowledge of the falsity of the representations
being made by RHODEN and the true facts were as follows;

a) that, the CANNABIS LAB INSTRUMENTS were not a turn-key solution
nor were they plug and play and each of these instruments did not provide
for easy operation for the testing of cannabis products in compliance with
BCC regulations;

b) that, the developed Method, and standardized SOP'S which were being
provided to EXCELBIS and other laboratories for each of the CANNABIS
LAB INSTRUMENTS were not beta tested nor validated in all matrices
(i.e., flower, edibles, extraction, tinctures) thus resulting in the instruments
being non- merchantable or commercially fit for their intended purpose of
testing cannabis are represented;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

c) that, the developed Method, and standardized SOP'S delivered and provided by PERKINELMER for each of the instruments did not provide a quick and easy method for preparing a BCC Validation package in compliance with BCC regulations;

d) that, the BCC was not accepting the PERKINELMER developed factory Method and standardized SOP's for other California Labs which purchased the CANNABIS LAB INSTRUMENTS prior to the purchase by EXCELBIS;

e) that, the BCC was rejecting validation packages for instruments which were using the PERKINELMER provided Methods and standardized SOPS;

f) that, other labs in California which had purchased one or more of the CANNABIS LAB INSTRUMENTS had to develop their own Methods and SOP's for each of the instruments which caused delays in excess of six to eight months to develop an individualized Method and SOP and thereafter prepare a validation package for submission to the BCC;

g) that, other California Labs which purchased CANNABIS LAB INSTRUMENTS had to incur substantial expense to develop their own individualized Methods and SOP's;

h) that, there were no laboratories in California which had successfully validated the CANNABIS LAB INSTRUMENTS in compliance with the BCC regulations strictly using only the PERKINELMER developed Method and SOP for each respective instrument;

i) that, the Qsight 420 was unable to test for both analogues of Spinetoram (L & J) which was required by the BCC and there were inappropriate peaks integrated and included in the calibration curve for pesticides, as well as, the CAS numbers were not correct for the required analytes;

18
SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**j)**  that, no laboratory in California had been able to validate the CANNABIS LAB INSTRUMENTS for BCC submission within sixty (60) days regardless of whether the lab was using PERKINELMER'S developed methods and standardized SOP'S, or not;

**k)**  that, PERKINELMER applications Scientists were continuing to develop Methods and standardized SOP's for each of the CANNABIS LAB INSTRUMENTS when the CANNABIS LAB INSTRUMENTS were marketed and sold in the California cannabis lab testing marketplace.

**l)**  that, PERKINELMER applications Scientists were continuing to develop Methods and standardized SOP's for each of the CANNABIS LAB INSTRUMENTS in conjunction with several cannabis laboratories in California to whom CANNABIS LAB INSTRUMENTS were sold prior to the sale to EXCELBIS;

**m)**  that, the PERKINELMER pesticide analyzer, the QSight 420, was not efficient and was not able to be quickly and efficiently be validated by several of the laboratories in California, which had purchased the Qsight 420 prior to the EXCELBIS purchase;

**n)**  that, the methods, and SOP'S developed by PERKINELMER for the Qsight 420 did not have the required sensitivity to detect all 66 pesticides as claimed, advertised, and represented;

**o)**  that, PERKINELMER was continuing to work to develop individualized SOP'S and Methods for the Qsight 420 as the PERKINELMER standardized SOP'S and developed Methods being delivered were not able detect the pesticide, Captan.

**p)**  that, the QSight 420's standardized SOP's and developed Methods provided by PERKINELMER to EXCELBIS did not provide a reliable and

reproducible method with precision and accuracy based on the Method and
SOP'S provided by PERKINELMER;

**q)** that, the QSight 420's standardized SOP's and developed Methods did not
have a through-put of 75 tests in a 24-hour period;

**r)** that, prior to the purchase of the Flexar-HPLC by EXCELBIS the Flexar-
HPLC, was not able to be validated by several laboratories in California
using the standardized SOP's and developed Methods provided by
PERKINELMER;

**s)** that, the Flexar-HPLC had antiquated and outdated software and
PERKINELMER'S experienced and knowledgeable Applications Scientist
(i.e., Margaret) was unable to use the PERKINELMER own SOP'S and to
produce any reliable, accurate or precise results with repeatability in any
matrix;

**t)** that, several laboratories in California which were sold the Flexar-HPLC
abandoned the instrument as it was very unreliable and did not perform as
represented and not merchantable for its intended purpose of providing
precise accurate and reliable potency results with any repeatability;

**u)** that, all the PERKINELMER Cannabis Testing Instruments did not have
state-of-the-art technology and software but was based on an old and
antiquated software platform.

**v)** that, the NexION 2000 was plagued with hardware and software issues and
the instrument randomly shutting down during test runs;

**w)** that, the Clarus SQ8 instrument for testing residual solvents and terpenes
was plagued with hardware and software issues which were well known to
PERKINELMER. The known and well-documented issues were, (i)
autosampler being out of sync with the GCMS; (ii) the calibrations curves

were not being consistent and, (iii) the Turbomass frequently skipped vials resulting in the test run being interrupted and stopped;

x) that, PERKINELMER field service technicians were not experienced, highly skilled or knowledgeable with PERKINELMER Cannabis Testing Instruments. There was a high rate turnover of personnel in the PERKINELMER Cannabis service department resulting in slow and inefficient field service. The dedicated instrument application Scientists who were highly skilled, experienced, and knowledgeable were unable to validate any of the Cannabis Testing Instruments with the standardized SOP'S and Methods provided by PERKINELMER as the SOP'S and Methods were not thoroughly tested in the various matrices as the CANNABIS LAB INSTRUMENTS were prematurely released as they were not commercially fit for their intended purpose.

49) Plaintiff-Counterclaim Defendant EXCELBIS is informed and believes and thereupon alleges that, at the time that Counterclaim Defendant RHODEN at the direction of PERKINELMER and PE SENIOR MANAGEMENT made the representations as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, with the intent and purpose of inducing EXCELBIS to purchase the CANNABIS LAB INSTRUMENTS knowing that the representations made by him as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, were in fact false and despite having knowledge of the true facts as set forth in paragraph 48(a) to (x), inclusive, which is incorporated herein in its entirety by this reference, PERKINELMER and PE SENIOR MANAGEMENT aided, abetted and continued to assist RHODEN to make the afore-mentioned representations as set forth in paragraphs 28 through 33, inclusive, and

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, with the intent induce EXCELBIS, and other similarly situated laboratories, to rely on said false representations.

50) Plaintiff-Counterclaim Defendant EXCELBIS justifiably relied on Counterclaim Defendant PERKINELEMER and RHODEN'S representations as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, because PERKINELMER manufactured the CANNABIS LAB INSTRUMENTS, was a billion dollar publicly traded company, successful in the medical and food service testing marketplace and held its self out as experts in the development of Methods and SOP's for the CANNABIS LAB INSTRUMENTS. Plaintiff-Counterclaim Defendant EXCELBIS reliance on PERKINELMER DEFENDANTS representations was reasonable and justifiable.

51) In justifiable reliance on the PERKINELMER and RHODEN'S misrepresentations as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, on May 9, 2019 EXCELBIS was induced to confirm its order for the PERKINELMER'S CANNABIS LAB INSTRUMENTS.

52) But for the PERKINELMER and RHODEN'S intentional misrepresentations as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, EXCELBIS would not have purchased the PERKINELMER Cannabis Testing Instruments.

53) As a result of the intentional misrepresentations outlined hereinabove, EXCELBIS by purchasing the CANNABIS LAB INSTRUMENTS was induced by PERKINELMER to incur out of pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83, itemized as follows:

22

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

a) $43,091.51 to Genie Scientific, OEM of PERKINELMER, for benches which were Invoiced by PERKINELMER as evidenced in Exhibits B and D to PERKINELMER'S first amended complaint on file herein and PERKINELMER required EXCELBIS to directly pay Genie Scientific and for other laboratory apparatus which was required by the specification and installation guides provided by PerkinElmer to EXCELBIS;

b) $61,813.42 paid to Emerald Scientific Internal Standards and Controls required by PERKINELMER to be purchased prior to installation and training of each of the CANNABIS LAB INSTRUMENTS;

c) $43,091.51 for standards, columns and other chemicals required by PERKINELMER prior to the setup of the CANNABIS LAB INSTRUMENTS in accordance with their setup and installation guides provided to EXCELBIS;

d) $27,346.00 to Proton Energy Systems, an OEM Vender of PERKINELMER, to be paid separately and directly, for the proton generator necessary and required to run the Qsight 420;

e) $23,500.00 paid to CBCI Construction Inc., for the electrical and gas and vent requirements for the CANNABIS LAB INSTRUMENTS specific to PERKINELMER as set forth in Exhibit 6 attached hereto;

f) $4,504.00 paid to Air Source and PRAXAIR for gases required for the setup and installation of the CANNABIS LAB INSTRUMENTS as set forth in Exhibit 6 attached hereto;

g) $22,315.39 to SYNARC studios for Architectural, Electrical and Mechanical plans for the hood and vent requirements which were directed by RHODEN and Genie Scientific and required for the safe operation of the CANNABIS LAB INSTRUMENTS and to comply with the requirements of as set forth in Exhibit 6 attached hereto;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

h) $80,000.00 for Jerry White, Ph.D., retained for the purpose of validation of the CANNABIS LAB INSTRUMENTS per the developed methods and standardized SOP'S of PERKINELMER.

54) Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof, for the nine (9) months of delay directly caused by the reliance of EXCELBIS on the alleged fraud for rent, overhead, insurance, internet, electricity and other operational expenses all to be itemized in detail at trial and according to proof;

55) Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00 based on the bare minimum achievable revenue model with the CANNABIS LAB INSTRUMENTS presented by RHODEN to KEVEN & EXCELBIS of $220,000 per month with a minimum of only twenty (20) Compliance samples a day based on the nine (9) months delay as statutorily allowed.

56) In doing the acts herein alleged, RHODEN, individually and on behalf of PERKINELMER and at the direction of PE SENIOR MANAGEMENT, Counterclaim Defendants PERKINELMER and RHODEN, each of them, acted with malice, fraud and oppression, as defined under Civ. Code § 3294(c), and willfully with the intent to cause injury to EXCELBIS. PERKINELMER and RHODEN are therefore guilty of malice and/or oppression and/or fraud in conscious disregard of EXCELBIS' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish PERKINELMER and RHODEN and deter others from engaging in similar misconduct.

WHEREFORE, EXCELBIS Prays for Judgment as set forth in the Prayer.

#

#

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

## SECOND CAUSE OF ACTION
## FRAUD & DECEIT-NEGLIGENT MISREPRESENTATION
## (CA Civil Code §1710(2))
## (Against All Counterclaim-Defendants and Doe-Defendants)

57) Plaintiff-Counterclaim Defendant EXCELBIS hereby re-alleges, refers, and incorporates by this reference, paragraphs 1 through 56 of this Counterclaim as though fully set forth herein.

58) Plaintiff-Counterclaim Defendant hereby specifically incorporates paragraphs 14 through 19, inclusive, of the GENERAL BACKGROUND FACTS in their entirety by this reference.

59) In the course of PERKINELMER'S business, PERKINELMER, through Counterclaim Defendant, RHODEN who was acting in concert with PE SENIOR MANAGEMENT made false statement and claims as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, related to PERKINELMER'S CANNABIS LAB INSTRUMENTS suitable for performing compliance cannabis testing in the highly regulated cannabis industry.

60) At the time that RHODEN on behalf of PERKINELMER made false statement and claims as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, related to PERKINELMER'S CANNABIS LAB INSTRUMENTS suitable for performing compliance cannabis testing in the highly regulated cannabis industry. RHODEN on behalf of PERKINELMER failed to exercise reasonable care or competence in verifying the accuracy of the information communicated to EXCELBIS as set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, and furthermore, RHODEN on behalf of PERKINELMER failed

to exercise reasonable care as to the veracity of his aforementioned statements relating to PERKINELMER'S CANNABIS LAB INSTRUMENTS suitability for performing compliance cannabis testing in the highly regulated cannabis industry.

61) At the time that RHODEN made misrepresentations of material facts on behalf of PERKINELMER as alleged and set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, RHODEN had no reasonable grounds for believing them to be true in that RHODEN, PERKINELMER and the PE SENIOR MANAGEMENT had information available to them as alleged in paragraph 48 (a) to (x), inclusive which is incorporated herein by this reference.

62) RHODEN on behalf of PERKINELMER made the representations with the intention of inducing EXCELBIS to act in reliance of the representation of the statements alleged and set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference and dissuade EXCELBIS from purchasing competitor AGILENT'S cannabis testing instruments and instead purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS.

63) Plaintiff-Counterclaim Defendant EXCELBIS relied on the information and statements of material facts as alleged and set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, in deciding to purchase PERKINELMER'S Cannabis Testing Instruments over competitor AGILENT'S cannabis testing instruments.

64) Plaintiff-Counterclaim Defendant EXCELBIS relied on Counterclaim Defendant PERKINELEMER representations made through it employee RHODEN as outlined hereinabove in as set forth in paragraphs 28 through 33,

inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, because PERKINELMER manufactured the Cannabis Testing Instruments, was a billion dollar publicly traded company, successful in the medical and food service testing marketplace and held its self out as experts in the development of Methods and SOP's for the CANNABIS LAB INSTRUMENTS. Plaintiff-Counterclaim Defendant EXCELBIS' reliance on RHODEN & PERKINELMER'S representations was reasonable and justifiable.

**65)** In reasonable and justifiable reliance on RHODEN & PERKINELMER'S statements Plaintiff-Counterclaim Defendant EXCELBIS did on May 9, 2019 commit to purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS through APEX for its SANTA ANA LAB. But for the material facts as alleged and set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, EXCELBIS would not have purchased PERKINELMER'S CANNABIS LAB INSTRUMENTS.

**66)** As a result of the negligent fraudulent misrepresentations outlined hereinabove, EXCELBIS by purchasing the CANNABIS LAB INSTRUMENTS was induced by PERKINELMER to incur out of pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83, itemized as follows:

**a)** $43,091.51 to Genie Scientific, OEM of PERKINELMER, for benches which were Invoiced by PERKINELMER as evidenced in Exhibits B and D to PERKINELMER'S first amended complaint on file herein and PERKINELMER required EXCELBIS to directly pay Genie Scientific and for other laboratory apparatus which was required by the specification and installation guides provided by PerkinElmer to EXCELBIS;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

b) $61,813.42 paid to Emerald Scientific Internal Standards and Controls required by PERKINELMER to be purchased prior to installation and training of each of the CANNABIS LAB INSTRUMENTS;

c) $43,091.51 for standards, columns and other chemicals required by PERKINELMER prior to the setup of the CANNABIS LAB INSTRUMENTS in accordance with their setup and installation guides provided to EXCELBIS;

d) $27,346.00 to Proton Energy Systems, an OEM Vender of PERKINELMER, to be paid separately and directly, for the proton generator necessary and required to run the Qsight 420;

e) $23,500.00 paid to CBCI Construction Inc., for the electrical and gas and vent requirements for the CANNABIS LAB INSTRUMENTS specific to PERKINELMER as set forth in Exhibit 6 attached hereto;

f) $4,504.00 paid to Air Source and PRAXAIR for gases required for the setup and installation of the CANNABIS LAB INSTRUMENTS as set forth in Exhibit 6 attached hereto;

g) $22,315.39 to SYNARC studios for Architectural, Electrical and Mechanical plans for the hood and vent requirements which were directed by RHODEN and Genie Scientific and required for the safe operation of the CANNABIS LAB INSTRUMENTS and to comply with the requirements of as set forth in Exhibit 6 attached hereto;

h) $80,000.00 for Jerry White, Ph.D., retained for the purpose of validation of the CANNABIS LAB INSTRUMENTS per the developed methods and standardized SOP'S of PERKINELMER.

67) Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof, for the nine (9)

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

months of delay directly caused by the reliance of EXCELBIS on the alleged fraud for rent, overhead, insurance, internet, electricity and other operational expenses all to be itemized in detail at trial and according to proof;

**68)** Pursuant to _California Civil Code §3343(a)(4)_ damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00 based on the bare minimum achievable revenue model with the CANNABIS LAB INSTRUMENTS presented by RHODEN to KEVEN & EXCELBIS of $220,000 per month with a minimum of only twenty (20) Compliance samples a day based on the nine (9) months delay as statutorily allowed.

WHEREFORE, EXCELBIS Prays for Judgment as set forth in the Prayer.

**THIRD CAUSE OF ACTION**
**FRAUD & DECEIT-SUPPRESSION OF FACTS**
**(CA Civil Code §1710(3))**
**(Against All Counterclaim-Defendants and Doe-Defendants)**

**69)** Plaintiff-Counterclaim Defendant EXCELBIS hereby re-alleges, refers, and incorporates by this reference, paragraphs 1 through 68 of this Counterclaim as though fully set forth herein.

**70)** Plaintiff-Counterclaim Defendant hereby specifically incorporates paragraphs 14 through 19, inclusive, of the GENERAL BACKGROUND FACTS in their entirety by this reference.

**71)** In the course of PERKINELMER'S business, RHODEN acting in the scope and course of his employment on behalf of PERKINELMER and in concert with PE SENIOR MANAGEMENT concealed, suppressed, and failed to disclose material facts as alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, in connection with attempting to induce EXCELBIS to purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS.

29
SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

72) PERKINELMER, through RHODEN who was acting in concert with PE SENIOR MANAGEMENT concealed and suppressed facts known to them and did not disclose the facts alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, which it was bound to disclose.

73) At the time that PERKINELMER, through its employee RHODEN who was acting in concert with PE SENIOR MANAGEMENT concealed and suppressed the facts as alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, which were known to RHODEN and PERKINELMER, should have been known to them or upon reasonable inquiry would have come to known to them.

74) At the time that PERKINELMER, through RHODEN who was acting in concert with the PE SENIOR MANAGEMENT concealed and suppressed the facts as alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, was to induce EXCELBIS to purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS.

75) The afore-mentioned omissions were material to EXCELBIS. But for the omissions, set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, EXCELBIS would not have purchased PERKINELMER'S Cannabis Testing Instruments.

76) Had EXCELBIS been aware of the concealed and suppressed facts as alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, EXCELBIS would not have purchased PERKINELMER'S Cannabis Testing Instruments.

77) PERKINELMER, through RHODEN who was acting in concert with PE SENIOR MANAGEMENT acted with the intent to mislead and deceive

30

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

EXCELBIS with the sole intent of inducing EXCELBIS to purchase PERKINELMER'S CANNABIS LAB INSTRUMENTS.

78) EXCELBIS relied on Counterclaim Defendant PERKINELEMER DEFENDANTS representations as outlined hereinabove set forth in paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference, because PERKINELMER manufactured the Cannabis Testing Instruments, was a billion dollar publicly traded company, successful in the medical and food service testing marketplace and held its self out as experts in the development of Methods and SOP's for the CANNABIS LAB INSTRUMENTS. Plaintiff-Counterclaim Defendant EXCELBIS' reliance on RHODEN & PERKINELMER'S representations was reasonable and justifiable.

79) PERKINELMER, through RHODEN had an affirmative duty to disclose the material facts as alleged and set forth hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, because:

   a) PERKINELMER had exclusive and /or far superior knowledge and facts related to its own CANNABIS LAB INSTRUMENTS, and these facts were: (1) not known to EXCELBIS; (2) not reasonably discoverable through ordinary due diligence and, (3) within fair and reasonable reach of PERKINELMER; and/or,

   b) PERKINELMER made incomplete representations related to the performance of the CANNABIS LAB INSTRUMENTS while purposefully concealing, suppressing, and withholding material facts known to PERKINELMER alleged in hereinabove in paragraph 48 (a) to (x), inclusive, which is incorporated herein in its entirety by this reference, from EXCELBIS contradict the representations set forth in paragraphs 28

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference.

80) The concealed, suppressed, and withholding material facts were basic to, or went to the essence of, the purchase and sale of the PERKINELMER'S CANNABIS LAB INSTRUMENTS by EXCELBIS.

81) As a result of EXCELBIS' reasonable and justifiable reliance on PERKINELMER and RHODEN'S representations and without knowledge of their material omissions and suppression of material facts, EXCELBIS purchased PERKINELMER'S CANNABIS LAB INSTRUMENTS through APEX. But for the material omissions and suppression of material facts, EXCELBIS would not have purchased PERKINELMER'S CANNABIS LAB INSTRUMENTS.

82) As a result of the intentional and willful suppression and omissions of material facts which PERKINELMER was bound to disclose, EXCELBIS was induced to purchase the CANNABIS LAB INSTRUMENTS and incurred out of pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83, itemized as follows:

a) $43,091.51 to Genie Scientific, OEM of PERKINELMER, for benches which were Invoiced by PERKINELMER as evidenced in Exhibits B and D to PERKINELMER'S first amended complaint on file herein and PERKINELMER required EXCELBIS to directly pay Genie Scientific and for other laboratory apparatus which was required by the specification and installation guides provided by PerkinElmer to EXCELBIS;

b) $61,813.42 paid to Emerald Scientific Internal Standards and Controls required by PERKINELMER to be purchased prior to installation and training of each of the CANNABIS LAB INSTRUMENTS;

32

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**c)** $43,091.51 for standards, columns and other chemicals required by PERKINELMER prior to the setup of the CANNABIS LAB INSTRUMENTS in accordance with their setup and installation guides provided to EXCELBIS;

**d)** $27,346.00 to Proton Energy Systems, an OEM Vender of PERKINELMER, to be paid separately and directly, for the proton generator necessary and required to run the Qsight 420;

**e)** $23,500.00 paid to CBCI Construction Inc., for the electrical and gas and vent requirements for the CANNABIS LAB INSTRUMENTS specific to PERKINELMER as set forth in Exhibit 6 attached hereto;

**f)** $4,504.00 paid to Air Source and PRAXAIR for gases required for the setup and installation of the CANNABIS LAB INSTRUMENTS as set forth in Exhibit 6 attached hereto;

**g)** $22,315.39 to SYNARC studios for Architectural, Electrical and Mechanical plans for the hood and vent requirements which were directed by RHODEN and Genie Scientific and required for the safe operation of the CANNABIS LAB INSTRUMENTS and to comply with the requirements of as set forth in Exhibit 6 attached hereto;

**h)** $80,000.00 for Jerry White, Ph.D., retained for the purpose of validation of the CANNABIS LAB INSTRUMENTS per the developed methods and standardized SOP'S of PERKINELMER.

**83)** Pursuant to _California Civil Code §3343(a)(1)_ damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof, for the nine (9) months of delay directly caused by the reliance of EXCELBIS on the alleged fraud for rent, overhead, insurance, internet, electricity and other operational expenses all to be itemized in detail at trial and according to proof;

33

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**84)** Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00 based on the bare minimum achievable revenue model with the CANNABIS LAB INSTRUMENTS presented by RHODEN to KEVEN & EXCELBIS of $220,000 per month with a minimum of only twenty (20) Compliance samples a day based on the nine (9) months delay as statutorily allowed.

**85)** In doing the acts herein alleged, RHODEN, individually and on behalf of PERKINELMER and at the direction of PE SENIOR MANAGEMENT, Counterclaim Defendants PERKINELMER and RHODEN, each of them, acted with malice, fraud and oppression, as defined under Civ. Code § 3294(c), and willfully with the intent to cause injury to EXCELBIS. PERKINELMER and RHODEN are therefore guilty of malice and/or oppression and/or fraud in conscious disregard of EXCELBIS' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish PERKINELMER and RHODEN and deter others from engaging in similar misconduct.

WHEREFORE, EXCELBIS Prays for Judgment as set forth in the Prayer.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Counterclaim-Defendant PERKINELMER, and Doe-Defendants)

**86)** Plaintiff-Counterclaim Defendant EXCELBIS hereby re-alleges, refers, and incorporates by this reference, paragraphs 1 through 87 of this Counterclaim as though fully set forth herein.

**87)** As the developer, manufacturer, marketer, distributor and/or or seller of the PERKINELMER Cannabis Testing Instruments, Counterclaim-Defendant PERKINELMER provided an implied warranty of merchantability for said Cannabis Testing Instruments.

34

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**88)** The CANNABIS LAB INSTRUMENTS sold to EXCELBIS were defective, as the developed Methods and Standardized SOP's provided by PERKINELMER for each instrument to EXCELBIS were flawed and each of the CANNABIS LAB INSTRUMENTS could not be validated to perform cannabis compliance tests within the regulatory guidelines of the BCC.

**89)** Additionally, the CANNABIS LAB INSTRUMENTS, each of them, encountered numerous latent hardware and software defects at the time the CANNABIS LAB INSTRUMENTS, were sold to EXCELBIS which could not have been reasonably discovered or known at the time purchase by EXCELBIS.

**90)** EXCELBIS therefore, did not receive CANNABIS LAB INSTRUMENTS, as impliedly warranted to be merchantable.

**91)** By virtue of the defects and failures in the Cannabis Testing Instruments PERKINELMER developed, manufactured, and sold, PERKINELMER has breached the implied warranty of merchantability.

**92)** As a result of the breach of the implied warranty of merchantability which was a result of the fraud and deceit as alleged in the first, second and third causes of action, EXCELBIS  is entitled to recover out of pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83, itemized as follows:

**a)** $43,091.51 to Genie Scientific, OEM of PERKINELMER, for benches which were Invoiced by PERKINELMER as evidenced in Exhibits B and D to PERKINELMER'S first amended complaint on file herein and PERKINELMER required EXCELBIS to directly pay Genie Scientific and for other laboratory apparatus which was required by the specification and installation guides provided by PerkinElmer to EXCELBIS;

#
#

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

b) $61,813.42 paid to Emerald Scientific Internal Standards and Controls required by PERKINELMER to be purchased prior to installation and training of each of the CANNABIS LAB INSTRUMENTS;

c) $43,091.51 for standards, columns and other chemicals required by PERKINELMER prior to the setup of the CANNABIS LAB INSTRUMENTS in accordance with their setup and installation guides provided to EXCELBIS;

d) $27,346.00 to Proton Energy Systems, an OEM Vender of PERKINELMER, to be paid separately and directly, for the proton generator necessary and required to run the Qsight 420;

e) $23,500.00 paid to CBCI Construction Inc., for the electrical and gas and vent requirements for the CANNABIS LAB INSTRUMENTS specific to PERKINELMER as set forth in Exhibit 6 attached hereto;

f) $4,504.00 paid to Air Source and PRAXAIR for gases required for the setup and installation of the CANNABIS LAB INSTRUMENTS as set forth in Exhibit 6 attached hereto;

g) $22,315.39 to SYNARC studios for Architectural, Electrical and Mechanical plans for the hood and vent requirements which were directed by RHODEN and Genie Scientific and required for the safe operation of the CANNABIS LAB INSTRUMENTS and to comply with the requirements of as set forth in Exhibit 6 attached hereto;

h) $80,000.00 for Jerry White, Ph.D., retained for the purpose of validation of the CANNABIS LAB INSTRUMENTS per the developed methods and standardized SOP'S of PERKINELMER.

93) Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof, for the nine (9)

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

months of delay directly caused by the reliance of EXCELBIS on the alleged fraud for rent, overhead, insurance, internet, electricity and other operational expenses all to be itemized in detail at trial and according to proof;

**94)** Pursuant to _California Civil Code §3343(a)(4)_ damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00 based on the bare minimum achievable revenue model with the CANNABIS LAB INSTRUMENTS presented by RHODEN to KEVEN & EXCELBIS of $220,000 per month with a minimum of only twenty (20) Compliance samples a day based on the nine (9) months delay as statutorily allowed.

WHEREFORE, EXCELBIS Prays for Judgment as set forth in the Prayer.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**
**(Against Counterclaim-Defendant PERKIN, and Doe-Defendants)**

**95)** Counterclaimant EXCELBIS hereby re-alleges, refers, and incorporates by this reference, paragraphs 1 through 94 of this Counterclaim as though fully set forth herein.

**96)** In connection with the sale of the PERKINELMER CANNABIS LAB INSTRUMENTS, PERKINELMER made various promises, affirmations, and representations related to the functionality thereof, as set forth hereinabove paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference.

**97)** PERKINELMER provided express warranties that the CANNABIS LAB INSTRUMENTS with the PERKINELMER developed and validated Methods and standardized SOP's sold to EXCELBIS would enable EXCELBIS to validate each of the CANNABIS LAB INSTRUMENTS satisfying the BCC guidelines for regulatory compliance testing of Cannabis. PERKINELMER additionally, made promises, affirmations, claims and representations as set

forth hereinabove paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference.

98) The afore-mentioned promises, affirmations, claims, and representations given by PERKIN for each of the CANNABIS LAB INSTRUMENTS became part of the basis of the bargain between EXCELBIS and PERKINELMER.

99) In purchasing the PERKINELMER CANNABIS LAB INSTRUMENTS, EXCELBIS reasonably relied upon the various attributes thereof as expressly warranted by PERKINELMER, as described herein above and as set forth hereinabove paragraphs 28 through 33, inclusive, and paragraphs 39 & 41, all of which are incorporated herein in their entirety by this reference.

100) When EXCELBIS received the PERKINELMER'S CANNABIS LAB INSTRUMENTS, which were installed at its SANTA ANA LAB, each of the Cannabis Testing Instruments did not function and perform as PERKINELMER warranted, and none of the CANNABIS LAB INSTRUMENTS, could be validated for Compliance testing of Cannabis products in conformity with BCC regulations.

101) Immediately following the installation of the CANNABIS LAB INSTRUMENTS, EXCELBIS notified the PERKINELMER of the defects and operational flaws in the standardized SOP's and developed Methods for each of the CANNABIS LAB INSTRUMENTS, as well as, hardware and software problems inherent therein, within a reasonable time after discovering the defects and flaws.

102) Counterclaim-Defendant PERKINELMER failed to remedy the operational defects of the Methods and SOP's provided and flaws in the CANNABIS LAB INSTRUMENTS and failed to render them functional to perform compliance tests of cannabis products within the regulations and guidelines of the BCC.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**103)**  Counterclaim-Defendant PERKINELMER has accordingly breached the express warranties it provided for the CANNABIS LAB INSTRUMENTS which failed to perform and function and validate as represented and warranted. As a result of this breach, EXCELBIS did not receive the Cannabis Testing Instruments as represented and warranted by Counterclaim-Defendant PERKINELMER.

**104)**  As a result of the breach of the implied warranty of fitness for a particular purpose, which was a result of the fraud and deceit as alleged in the first, second and third causes of action, EXCELBIS is entitled to recover out of pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83, itemized as follows:

**a)**  $43,091.51 to Genie Scientific, OEM of PERKINELMER, for benches which were Invoiced by PERKINELMER as evidenced in Exhibits B and D to PERKINELMER'S first amended complaint on file herein and PERKINELMER required EXCELBIS to directly pay Genie Scientific and for other laboratory apparatus which was required by the specification and installation guides provided by PerkinElmer to EXCELBIS;

**b)**  $61,813.42 paid to Emerald Scientific Internal Standards and Controls required by PERKINELMER to be purchased prior to installation and training of each of the CANNABIS LAB INSTRUMENTS;

**c)**  $43,091.51 for standards, columns and other chemicals required by PERKINELMER prior to the setup of the CANNABIS LAB INSTRUMENTS in accordance with their setup and installation guides provided to EXCELBIS;

**d)**  $27,346.00 to Proton Energy Systems, an OEM Vender of PERKINELMER, to be paid separately and directly, for the proton generator necessary and required to run the Qsight 420;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

**e)** $23,500.00 paid to CBCI Construction Inc., for the electrical and gas and vent requirements for the CANNABIS LAB INSTRUMENTS specific to PERKINELMER as set forth in Exhibit 6 attached hereto;

**f)** $4,504.00 paid to Air Source and PRAXAIR for gases required for the setup and installation of the CANNABIS LAB INSTRUMENTS as set forth in Exhibit 6 attached hereto;

**g)** $22,315.39 to SYNARC studios for Architectural, Electrical and Mechanical plans for the hood and vent requirements which were directed by RHODEN and Genie Scientific and required for the safe operation of the CANNABIS LAB INSTRUMENTS and to comply with the requirements of as set forth in Exhibit 6 attached hereto;

**h)** $80,000.00 for Jerry White, Ph.D., retained for the purpose of validation of the CANNABIS LAB INSTRUMENTS per the developed methods and standardized SOP'S of PERKINELMER.

**105)** Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof, for the nine (9) months of delay directly caused by the reliance of EXCELBIS on the alleged fraud for rent, overhead, insurance, internet, electricity and other operational expenses all to be itemized in detail at trial and according to proof;

**106)** Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00 based on the bare minimum achievable revenue model with the CANNABIS LAB INSTRUMENTS presented by RHODEN to KEVEN & EXCELBIS of $220,000 per month with a minimum of only twenty (20) Compliance samples a day based on the nine (9) months delay as statutorily allowed.

WHEREFORE, EXCELBIS Prays for Judgment as set forth in the Prayer.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

## PRAYER

WHEREFORE, Plaintiff-Counterclaim Defendant Excelbis Labs, LLC., prays for judgment against PERKINELMER and RHODEN as follows:

**FIRST CAUSE OF ACTION**
**FRAUD & DECEIT-INTENTIONAL MISREPRESENTAITON**
**(Cal. Civ. Code §1710, et seq)**
**(Against All Counterclaim-Defendants and Doe-Defendants)**

1) For out-of-pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83 as itemized in the cause of action hereinabove;

2) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof;

3) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00

4) Exemplary and punitive damages in an amount determined by the court to be reasonable as authorized by *section 3294 of the California Civil Code*;

5) For prejudgment interest as allowable by law;

6) Costs of Suit herein incurred; and

7) For other and further relief that the Court considers proper.

**SECOND CAUSE OF ACTION**
**FRAUD & DECEIT-NEGLIGENT MISREPRESENTATION**
**(CA Civil Code §1710(2))**
**(Against All Counterclaim-Defendants and Doe-Defendants)**

1) For out-of-pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83 as itemized in the cause of action hereinabove;

41
SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

2)  For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof;

3) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00

4) For prejudgment interest as allowable by law;

5) Costs of Suit herein incurred; and

6)  For other and further relief that the Court considers proper.

## THIRD CAUSE OF ACTION
## FRAUD & DECEIT-SUPPRESSION OF FACTS
## (CA Civil Code §1710(3))
## (Against All Counterclaim-Defendants and Doe-Defendants)

1) For out-of-pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83 as itemized in the cause of action hereinabove;

2)  For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof;

3) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00

4) For prejudgment interest as allowable by law;

5) Costs of Suit herein incurred; and

6)  For other and further relief that the Court considers proper.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Against Counterclaim-Defendant PERKINELMER, and Doe-Defendants)

1) For out-of-pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83 as itemized in the cause of action hereinabove;

2) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof;

3) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00

4) For prejudgment interest as allowable by law;

5) Costs of Suit herein incurred; and

6) For other and further relief that the Court considers proper.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE
## (Against Counterclaim-Defendant PERKINELMER and Does101-110)

1) For out-of-pocket expenses recoverable pursuant to *California Civil Code §3343*, in the total sum of $305,661.83 as itemized in the cause of action hereinabove;

2) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(1)* damages in an amount actually expended in reliance upon the fraud, in the total approximate sum of $425,000, the exact amount to be determined at trial according to proof;

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

3) For out-of-pocket expenses recoverable pursuant to Pursuant to *California Civil Code §3343(a)(4)* damages for the lost profits or gains which might reasonably be anticipated in an amount of $1,980,000.00

4) For prejudgment interest as allowable by law;

5) Costs of Suit herein incurred; and

6) For other and further relief that the Court considers proper.

Dated: February 26, 2021                    Law office of Sunil A. Brahmbhatt
                                            A Professional Law Corporation

                                            */s/Sunil A. Brahmbhatt*
                                            Sunil A. Brahmbhatt, Esq.
                                            Attorney for Plaintiff Counterclaim
                                            Defendant Excelbis Labs, LLC.

## DEMAND FOR JURY TRIAL ON COMPLAINT AND COUNTERCLAIMS

Plaintiff Counterclaim Defendant EXCELBIS LABS, LLC., A California Limited Liability company hereby **demands trial** by **Jury on Plaintiff's Claims and its Counterclaims**.

Dated: February 26, 2021                    Law office of Sunil A. Brahmbhatt
                                            A Professional Law Corporation
                                            */s/Sunil A. Brahmbhatt*
                                            Sunil A. Brahmbhatt, Esq.
                                            Attorney for Plaintiff Counterclaim
                                            Defendant Excelbis Labs, LLC.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.

# PROOF OF SERVICE

## OF

## DOCUMENT BY NEF

I, the undersigned certify and declare that I am over the age of 18, employed in the County of Orange, State of California, resident of the State of California, and not a party to the above-entitled cause.

On February 26, 2021, I served a true and correct copy of:

**DEFENDANT EXCELBIS LABS LLC., TO SECOND AMENDED COUNTER CLAIM**

**TO BE SERVED BY THE COURT VIA NOTICE OF BY ELECTRONIC FILING (NEF):** I caused the foregoing document to be e-filed and served via CM/ECF with the United States District Court, Central District of California upon the above-addressed party. I - checked the CM/ECF docket for this case and determined that the following persons are on the electronic Mail Notice to receive NEF transmission at the email address below:

**Attorneys for Plaintiff Perkinelmer Health Sciences, Inc.**
William A. White, Esq. wwhite@hillfarrer.com
Jeffery B. Bell, Esq. jbell@hillfarrer.com

**Attorney for Apex Financial**
Jason Granskog, Esq.  jgranskog@bowlesverna.com

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2021**,** at Santa Ana, California.

_/s/Sunil A. Brahmbhatt_____
Sunil A. Brahmbhatt, Esq.

SECOND AMENDED COUNTERCLAIM OF EXCELBIS LABS, LLC.